I'm Adam Wachowski on behalf of the appellant to Monica Perkins. On May 31st, 2020, Polk County Deputy Jason Tartt was in the turret of an armored vehicle driving through the parking lot of the Mohe Mall Target when he shot Monica Perkins, a 51-year-old black woman, with an impact round from 60 to 75 feet away. The Mohe area had been the site of an anti-police brutality protest arising from the killing of George Floyd, with the law enforcement having declared a riot approximately a half hour before Monica Perkins arrived in the area. Unknown to her, that included the giving of disbursement orders for the protesters to clear the area. The area was clear, the parking lot that Deputy Tartt and the Metro Star team that he was a member of in the armored vehicle, known as a Bearcat, had been tasked with clearing the lot through the use of less lethal means, less lethal munitions if necessary. Counsel, as you know, one of the things that we will look at is objective manifestations of intent to restrain. What would you say those objective manifestations are in this case? To that point, the critical part of that is that it is the objective manifestation of intent to restrain as understood by the person being subjected to the force. It would be a reasonable person who is being targeted by the force, what their objective understanding of it would be. In this case, you have a situation where, as stated by Ms. Perkins, was unaware that disbursement orders had been given for the parking lot area. She was not there when they were given. No disbursement orders were given directly to her before she was targeted with the force. Contrary to Deputy Tartt's claims, she was not moving towards the grass, towards the lot. I believe the video directly contradicts that claim, and if you disagree, there is contrary testimony in the record on that point as well. When she was out of her vehicle, confronting the driver of another vehicle who had been directing racial comments, racist comments, towards her and her daughter, when she got out of the vehicle to confront that individual, then turned back around, walked back towards her passenger seat, which, according to the record, is when Deputy Tartt decided to use force against her. Counsel, couldn't that be viewed by the officer as someone blocking a roadway during a riot so that emergency vehicles couldn't get through? That's not how Deputy Tartt took it. Deputy Tartt's testimony is, she was coming towards the grass, she had her hand behind her back, which means she was a threat to me, and he fired an impact round at her because she was a threat. That is disproven by the dash cam video from Officer Hunter, which was recorded from across the street. It still has to be with the intent to restrain, correct? As understood by the person being subjected to the force. Where are you getting that standard? Where does that standard come from? That standard comes from, it comes from Vendman, it comes from Atkinson. What about Torres, which is their most recent Supreme Court case on this very issue, and it's the quotation that Judge Graz has given. Is that the instruction from Torres? I believe that it is, because Torres, she was, the person who was subjected to the force in Torres, she believed that she was being carjacked, and that it was carjackers who were shooting at her. They were trying to stop her. She believed that they were trying to stop her. I think that part of the issue here is that too often in these cases, seizure is conflated with arrest. Well, okay, all right, and I understand that there's some, that there are troubling facts here on that day. What I'm trying to get at is sort of our direction from the Supreme Court, and trying to figure out whether there was an intent to restrain. So can you help me understand, in your case, what is the restraint here? And putting aside, we all understand she was not arrested, but I think it can be short of arrest, that a restraint, I think is your point. Why is there a restraint here? Because it was the application of physical force, fewer, which is necessarily, if briefly, a restraint. So is it your position that any time an officer uses any type of force, any kind of touching to the person, that that's enough? If the objective circumstances are that an individual could understand that they were being restrained. Let me drill down on that a little bit. One of the things that could possibly be an objective manifestation of intent to restrain is the use of deadly force. Was the force used here, could it be characterized as deadly force? No, I don't believe that it can be. And unlike in the Mark's case, this is not a situation where a less lethal munition was fired at a, potentially at a spot that could constitute deadly force. This was a less lethal munition that was fired at most in the center mass area, I think the terminology is, that ended up striking her hand and breaking her pinky finger. But no, I don't think that there's anything in the record to demonstrate that it'd be deadly force. But I think that it is still, that that use of force, especially as understood by somebody in Ms. Perkins' situation, would be sufficient for a restraint, for the person to understand they were being restrained. And you look at that, and it all comes down to what the person would have understood at the time the force was directed against them. And that's why I think some of these issues arise with the conflation between seizure and arrest is, and I think that it comes through in the Mark's decision, particularly the district court's discussion of it, is that if the, and including Anne Atkinson, that if, when the force is, when the person is hit with the force, if they would objectively think they are trying to stop me, they're trying to restrain me, then they are, then they are restrained. And that is, then that is sufficient to establish a seizure. But aren't the facts really bad for that? Because she isn't stopped for a moment. She gets phoned, gets back in car, and daughter drives away in car with her. And again, I think that's what we're looking at, you have to separate the post, her post-force actions and everyone's post-force actions from, from pre, from the pre-force. We are looking at what occurred pre-force. And I think the Gardner decision is, is, is, sets that standard. So it is what she would have been objectively aware of pre-force, when the, then when the force hits her, how she would have, what she would have understood that to mean, not anything that occurred after the fact. And I think that there is, that there is, there is testimony in the record from the individual she was confronting that she was in fact stopped by the force. In fact, he, he testifies that, basically, thank God the officer shot her, because it stopped her from getting closer to my, getting closer to my vehicle. Your, your rebuttal time is up. Yes. And I'm going to reserve the rest of my time for rebuttal, unless there are more questions. Thank you, Mr. Bartoski. Ms. Gavin. Thank you, Your Honor. May it please the Court, Counsel, Megan Gavin, on behalf of all defendants. To answer your question, Your Honor, on page 11 of Ms. Perkins' brief, she declares, shooting Monica with the impact round is the only objectively manifest conveyance of Deputy Tartt's intent. If we are looking solely at the use of force, then we have swallowed the Supreme Court's distinction in Torres about the intent of the officer when using said force, and we have erased the distinction between the force used to apprehend and a force used to restrain. Counsel, is there a limit on what force can be used by officers to disperse or repel a person? Yes, Your Honor. Are you familiar with Judge Schultz's case in which he erased the specter of a legal black hole being created by the courts if we make a bright line between intent to restrain and intent to repel? I would certainly say, Your Honor, that that is a potential issue. The use of deadly force, Your Honor, I think obviously would call into question what is the objective manifest intent of the officer. So I think the type of force, perhaps even the disproportionate use of force would be relevant in creating that. But I think that ultimately calls into question about whether or not the intent was actually to disperse or to restrain. How about if they decided to use police dogs to disperse a crowd? Would that cause any constitutional problems? Potentially, Your Honor. I think the purpose of police dogs is generally to physically hold a suspect. So I don't know if dispersal would be proper under those circumstances. That would almost be akin to some of your case law about kettling or narrowing people into an area and not permitting an avenue of dispersal. How about fire hoses? Fire hoses? I think it would depend. All of it, of course, is very fact-specific. But, again, I think fire hoses could be used as a show of force with the intent to disperse, assuming there was an avenue available for the individuals to disperse thereafter. And here, there isn't any other evidence of an intent by deputy charge to do anything other than to disperse Ms. Perkins. And I think I want to be clear, and this is a nuance, Mr. Wachowski said that Ms. Perkins was not ordered to disperse prior to this. She, of course, wasn't arrested for failure to disperse. But in any event, Deputy Tartt did state under oath that he made a dispersal order. I would submit Ms. Perkins may be truthful in her testimony that she didn't hear it. But I think that's a different issue in whether or not it was made. In any event, she was told seconds before she stopped her car for the second time and exited her car for the second time by Officer Peterson to move along from the area. This case is a little different because I think in, well, I'll just say a typical dispersal, you're talking about a group of people. Maybe officers are outnumbered by protesters, for example. Here we have a situation where I think the evidence shows that Detective Tartt was focused and aiming directly at Ms. Perkins. How does that factor into this idea of dispersal when there's only the one person? I would say, Your Honor, under the recent case of Dundoon, you addressed this question of whether or not a targeted use of force objectively took away from the intent to disperse versus a crowd. And you determined that a targeted use of force was still an appropriate use of force for dispersal. Wasn't that decided on clearly established grounds in that case? It was, Your Honor. So it wasn't really on whether there was a violation. It was. I believe the Court did not directly address the issue of seizure. Right. On the clearly established ground, I would say in that case you determined that of November of 2016 that it was not clearly established that the use of less lethal munitions constituted a seizure. Since our briefing in this case, Your Honor, actually a month thereafter, you decided the case of Wolk v. Brooklyn Center and determined that of April 2021 it was still not clearly established that a use of less lethal ammunitions to disperse constituted a seizure. Of course, our case squarely fits in between those two dates of May of 2020. So it was not clearly established on May 31st of 2020 that Detective Tartt's use of less lethal munitions constituted a seizure. Ms. Perkins, her movement was certainly restrained, was it not, with the use of the munition that hit her hand? I would say momentarily, Your Honor, and that was for a time a potential standard, a theory on what constituted a seizure, whether the even momentary directional change or physical stopping of movement constituted a seizure. I believe the U.S. Supreme Court has done away with that in the Torres decision. So how do you see then the Torres decision modifying that? I think Torres decision modifies that because under that theory, any application of force by law enforcement would constitute a seizure, even for the momentary. That would include potentially even accidental contact by law enforcement. It would include this type of use of force with an intent to do something other than restrain. Now, you did not address the 14th Amendment claims, but I wanted to address them briefly. I think these are issues of law for the court to decide, both excessive force and substantive due process claims. The standard of review for this court is a matter for you to determine. In researching your litany of cases in this area, I was unable to uncover a single one where this court applied the deliberate indifference standard. Instead, this court has uniformly used the intent to harm standard and determined whether or not Detective Tartt's actions shocked the conscious. Here, there is no intent to harm under the undisputed facts in this case. The impact round was used according to manufacturer's instructions, and as conceded by counsel, it was directed and targeted to her center of mass so as not to inflict serious injury or maximum pain. I would also note, while it is true that Ms. Perkins correctly points out that we did not independently argue the reasonableness of Detective Tartt's actions, we have not conceded that issue by any means. Certainly, there are some potential factual issues that played into whether or not his actions were reasonable. As counsel noted, Ms. Perkins' exact movement at the time, Deputy Tartt chose to take his actions. For that reason, I elected not to raise it on summary judgment. However, I would note the City of Des Moines did in their briefing to the court, though it was not addressed by the district court. So is that something we would send back? Is that your point? No. My point is that for Ms. Perkins to win, she has to get over the hurdles of whether or not there was a seizure and then whether or not there was qualified immunity. Only then would the reasonableness of Detective Tartt's use of force come into play. And there are still factual disputes, is what you're saying there, on that issue? I said there are potential. Des Moines disagreed with the county on that issue, and they argued that his conduct was reasonable. And to the City of Des Moines defendants, since they have graciously allotted me their time, I would say that obviously their liability stems on whether or not there was a constitutional violation by Detective Tartt. However, they have raised also independent grounds for why the failure to intervene must be dismissed. There is no evidence in the record that they either saw Ms. Perkins had an opportunity to assess her threat and direct Detective Tartt prior to his use of force. So for that reason, they should be dismissed, even if you do find there to be a factual issue in this case. If there are no further questions, the defendants would request that the decision of the district court be affirmed. Thank you, counsel. Thank you. A few quick points. Going to the Torres decision, on page 318 of that decision, it states, but the conduct of the officers ordering Torres to stop and then shooting to restrain her movement satisfies the objective test for a seizure regardless of whether Torres comprehended the governmental character of their actions. At the same time, it makes clear that it is the objective understanding of the person being subjected to the force, not a subjective understanding that determines whether or not it is a seizure. And that's what we have here. I believe that there is sufficient evidence in the record to support an objective understanding by someone in this Perkins situation that she was being seized. As to the idea that Deputy Tartt gave her dispersal warning, he is the only person who says that. The other people in the Bearcat say they never heard anything, even though they had heard him asking for munitions just moments earlier. Ms. Perkins and her daughter didn't hear anything. There is nothing on any of the videos showing there was a dispersal. The last dispersals came about a half hour before they arrived on the scene. Next, as to what Officer Peterson told them at the Starbucks intersection entrance to the mall, they were told to move along from that area, from that intersection, which they had been blocking. And finally, the Dundon case is a use of force to disperse, not to restrain case. I don't believe that under these circumstances is applicable here. Unless you have questions, thank you for hearing me this morning. Thank you, Counsel, for the argument. Case No. 24-1375 is submitted for decision by the Court.